## APPEAL OF HIGH SHOALS CO.

Docket No. 1686.　Submitted June 25, 1925.　Decided January 14, 1926.

> The evidence does not warrant a finding that there was such an abnormality of income or capital of the taxpayer for the calendar year 1918 and for the two-month period ended February 29, 1920, as entitles it to a determination of tax liability under section 328 of the Revenue Act of 1918.

*E. S. Parker, Esq.*, for the taxpayer.
*Arthur H. Fast, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies for the year 1918 in the amount of $7,760.99, and for the two-month period ended February 29, 1920, in the amount of $14,546.52. The sole issue is whether the taxpayer is entitled to have its liability for profits tax for the year and period stated above computed under the provisions of section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer was a North Carolina corporation with its principal office at Charlotte. It was organized in 1899 and was dissolved on February 29, 1920. It was engaged in the manufacture of cotton cloth.

The original mill building was constructed at a cost somewhat less than the prevailing cost for the construction of similar buildings in the vicinity by contractors. The bricks for the foundation and walls were made on the taxpayer's premises, and when laid represented a cost of approximately $4.50 per thousand. The prevailing

cost at that time, in the vicinity of taxpayer's mills, for brick laid in the wall by building contractors was approximately $8 to $10 per thousand. Cord wood for the kilns was cut from the taxpayer's lands.

Additions to the original mill building were made in 1902 and 1903. The bricks used in the construction of these additions represented a cost to the taxpayer of approximately $6.25 per thousand, laid in the wall. The prevailing cost at that time, in the vicinity of the taxpayer's mills, for brick laid in the wall by building contractors, was approximately $10 to $12 per thousand.

During the year 1918 and the fiscal period 1920, the taxpayer's mills were operated partly by water power developed and owned by the taxpayer, and partly by electric power purchased from a public utility company. The developed water power yielded approximately 700 horsepower, averaged for the whole year on a daily run of 24 hours. The cost of developing this water power, as shown by the books of account, was $50,000. The prevailing market price for hydroelectric power was approximately $22.50 per horsepower for a 12-hour run. The carding and spinning departments of the taxpayer's mills were operated 24 hours per day approximately 300 days in the year.

In 1920 the capital stock of the taxpayer was sold for $1,145,520. The purchasers withdrew liquid assets amounting to $329,333.47, and assumed liabilities amounting to $75,943.50, leaving an amount paid for plant of $892,130.12 as of March 1, 1920. The purchasers figured the water power to be worth about $350,000 to them.

For the year 1918 the net income and invested capital, as determined by the Commissioner, are, respectively, $217,508.96 and $532,-578.17. The net income is 40.84 per cent of the invested capital. The profits-tax liability, as determined by the Commissioner under section 301, is $129,000.91, or 59.31 per cent of the net income.

For the two-month period ended February 29, 1920, the net income and invested capital, as determined by the Commissioner, are, respectively, $56,042.11 and $108,620.28. The net income is 51.59 per cent of the invested capital. The profits-tax liability, as determined by the Commissioner under section 301, is $16,234.11, or 28.96 per cent of the net income.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The taxpayer's sole allegation of error is that the Commissioner erred in denying the taxpayer's appeal for relief under the

provisions of section 328 for the calendar year 1918 and for the two-month period ended February 29, 1920. The alleged facts upon which the taxpayer relies as the basis of its appeal are as follows:

(a) Due to the fact that the officers owned a large percentage of stock, the salaries paid them were abnormally low.

(b) The taxpayer owned and used in its business a water power carried on its books at $50,000, but worth between $300,000 and $400,000.

(c) The president and principal stockholder of the corporation, one D. A. Tompkins, was a manufacturer of textile machinery, and a large part of the machinery used in the cotton mill was built in the machinery factory at a reduced cost, or, in many cases, at no cost whatever to the corporation.

(d) The mill was operated double time and in this way one investment was made to produce approximately double the net income.

In addition to the foregoing, the taxpayer alleges that its true invested capital can not be satisfactorily determined.

With respect to the first allegation of error, the taxpayer has not submitted any evidence as to the salaries paid to executive officers of other corporations and the Board is not in possession of information which enables it to determine whether the salaries paid to its executive officers were abnormally low in comparison with the salaries paid to officers of other similar corporations.

The greater portion of the evidence presented by the taxpayer is directed toward the proof that a water power which cost approximately $50,000 was worth between $300,000 and $400,000 during the taxable periods herein considered. The evidence shows that, through the expenditure of approximately $50,000 for the construction of the dam and appurtenances for water power, the taxpayer has harnessed the waters of a stream on the site of its mill and from that source is receiving the year round power for the partial operation of its mill, some departments of which are operating 24 hours per day 300 days in the year. The total power received from this source was 700 horsepower. During the year and period under review hydroelectric power was available in the vicinity of the taxpayer's mill at $22.50 per horsepower on a 12-hour run. Thus, a very considerable saving resulted from the availability and use of this water power. The purchasers of the capital stock in 1920 figured that the water power had a value of $350,000.

It is to be noted, however, that invested capital under the statute is to be computed upon the basis of the capital embarked by the stockholders in the corporation and upon the surplus earned subsequent to organization. Tangible property paid in for shares of capital stock is to be included in invested capital only to the extent of the value of the tangible property " at the time of such payment." Section 326 (a) (2), Revenue Act of 1918. The in-

crease in the value of the property paid in to the corporation or acquired by it may not be included in invested capital under the statute. No evidence is before the Board in this appeal that the water power cost the taxpayer in excess of $50,000 at the time it was acquired. The proof that it had a much greater value in 1918 and 1920, standing alone, is insufficient to establish the right of the taxpayer to relief under the provisions of section 328 of the Revenue Act of 1918.

The third contention of an abnormality in invested capital is that one D. A. Tompkins, president and principal stockholder of the corporation, during the early period of its existence, contributed textile machinery at no cost whatever to the taxpayer and also sold machinery to it at less than the actual market value. This allegation is supported by the evidence of one witness, the superintendent of the mill for many years, who gives his testimony from memory. He testified that Tompkins had contributed 1 spinning frame, 4 spoolers, 6 reels, 1 starch kettle, 1 banding machine, and 1 baling press. The value of this equipment is not in evidence. It is stated that these machines were in the mill in 1918, but the extent to which they had depreciated is not known. The witness had never kept and apparently never had access to the books of the corporation to know whether the fact of the gift of this equipment to the corporation had been taken into account in determining the amount of depreciation which had been sustained up to the year 1918. There is no proof that Tompkins ever sold machinery to the taxpayer at less than market value. In the light of the meager information upon this point we do not think that the taxpayer has sustained the burden of proof in supporting its allegation that an abnormality of invested capital is attributable to the contribution of this equipment.

The fact that the mill was operated double time during the taxable periods under review does not prove an abnormality either of income or of invested capital.

From a consideration of the entire record the Board is of the opinion that the evidence does not show such an abnormality of net income or invested capital for the calendar year 1918 and for the two-month period ended February 29, 1920, as warrants a determination of tax liability under section 328 of the Revenue Act of 1918.

On reference to the Board:

TRAMMELL, dissenting: I am unable to concur in the decision and opinion of the Board in the above appeal.

In my opinion the appeal presents a situation which clearly comes within the provisions of section 327 of the Revenue Act of 1918. The taxpayer constructed its original mill building at less than the

market price prevailing at the time, because the brick for the foundation and walls was made on the taxpayer's premises and cost approximately $4.50 per thousand when laid, whereas the prevailing cost at that time was approximately $8 to $10 per thousand. The same situation existed with respect to additions to the original mill building. The brick cost approximately $6.25 per thousand while the prevailing market price was approximately $12 per thousand. In other words, the brick used in the construction of these buildings cost the taxpayer approximately 50 per cent of the market value. No evidence was introduced, however, as to the investment in these assets or their value when acquired. We have, therefore, no means of determining whether capital was substantially affected by the foregoing circumstances.

But, in addition to the foregoing facts, the taxpayer developed water rights which yielded approximately 700 horsepower. The cost of developing this water power was approximately $50,000, and, when developed at such expense, had an estimated value of from $350,000 to $400,000. This was a material income-producing factor in the business. The taxpayer thus had and used in its business, as a material part of its capital assets, property of a substantial value which it could not include in invested capital due to the limitations of section 326.

The opinion states that invested capital, under the statute, is to be computed upon the basis of the capital embarked by the stockholders and upon the surplus earned or paid in subsequent to organization. This is undoubtedly true, but the question then presents itself whether, when the taxpayer has in its business assets of a recognized and substantial value which are producing income and which it can not capitalize, due to the limitations of section 326, an abnormality exists which brings it within the provisions of section 327. My view is that it does. That fact, in my opinion, is an abnormality affecting capital, as provided in section 327, provided the amount excluded from invested capital on this account is substantial in amount. If, on account of such exclusion, an exceptional hardship results, as evidenced by a gross disproportion between the tax computed without the benefit of that section and the tax computed by a reference to representative corporations, as specified in section 328, the taxpayer is entitled to relief, according to my interpretation of the statute.

As an illustration, take the case of a corporation which has patents of a recognized value of $10,000,000, but which it has developed in its business at a cost of $10,000. Under section 326 it can include in invested capital only the $10,000, which is the cost of development and acquisition of the patents. Yet, if the patents when acquired had an actual value of $10,000,000, it seems to me that it would be

perfectly clear that an abnormality in capital existed and that an exceptional hardship would be placed upon such a taxpayer if the excess-profits credit were allowed it upon the basis only of cost of acquisition of such patents. If such a situation is not an abnormality in capital, or, if the case of a taxpayer having in its business capital assets which it can not include in invested capital, due to the operation of section 326, does not present an abnormal situation affecting capital as contemplated in section 327, I do not know of any case or set of facts which constitutes an abnormality in respect to capital.

I believe that the congressional history of the legislation involved and the discussions during the progress of the legislation in Congress amply support the position I have taken in this appeal. This is illustrated by the following quotation from the report of the Senate Finance Committee to the Senate while the Revenue Act of 1918 was before that body:

* * * The present statutory rule works well in a large majority of cases. The remaining cases in which it works injustice can and should be cared for by adequate relief provisions which the Committee has carefully formulated and recommends. The Committee therefore endorses the general rule expressed by the House bill in paragraph 3 of sub-division (a) of section 326, but believes that in certain exceptional cases inability to recognize appreciation furnishes just ground for relief and in order that such relief may not be imperiled by over-emphasis upon the general principle, recommends that the explicit denial of the right to include any increase in value of assets over original cost be stricken from section 326.

The question before the committee at that time was whether section 326 should contain an express provision that the increase in value of assets over cost should not be included in invested capital. The committee clearly had in mind in making that report that such a situation might present a case where relief should be granted under section 328.

Section 327, as it passed the House, was amended in the Senate by adding additional grounds for relief. Subdivision (3) was changed to read, in part, as follows:

Where the invested capital is materially disproportionate to the net income as compared with representative corporations engaged in a like or similar trade or business because: * * *

2. There are excluded from the invested capital as computed under the provisions of section 326, intangible assets of recognized and substantial value built up or developed by the taxpayer * * *.

Mr. Kitchin, who was in charge of the bill in the House and who was a member of the conference committee, in his report from the committee to the House, referred to the changes as follows:

The Senate amendment increases the classes of cases in which the tax is to be fixed by reference to the experience of representative corporations; includes therein all foreign corporations, and provides that in such cases the

tax shall be the amount which bears the same ratio to the net income of the taxpayer for the taxable year as the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income for such years.

The House recedes with amendments:

(1) Making clerical changes;

(2) Consolidating a number of separate classes of cases differentiated in the Senate amendment into a single class of cases  *  *  *.

It thus seems that the purpose of section 327, as finally passed, was to consolidate the provisions set out separately in the amendments which enlarged the scope thereof within a single class of cases. In my opinion, it was not the intention of Congress to make section 327 any narrower than the language of the amendments clearly and specifically provided.

Even the most strict construction of section 327, in my opinion, would warrant my view in this appeal, but this being admittedly relief legislation, it should be given a broad and liberal construction.

I readily agree that there is not sufficient evidence in this appeal to entitle the taxpayer to relief under section 328, because no evidence of the taxes paid by representative concerns has been introduced, and this being true, we have no means of knowing whether the taxpayer has suffered an exceptional hardship as evidenced by gross disproportion between the tax computed without the benefit of this section and the tax computed by reference to representative corporations specified in section 328. However, this does not mean that there was not an abnormality in the capital of this taxpayer, and the Board, in other appeals, has determined that there was abnormality in capital or income and has referred the case back to the Commissioner for the selection of proper comparatives. Since an abnormality in capital clearly exists in this appeal, I differ from the Board in that I think the case should be referred to the Commissioner for the selection of comparatives and the determination of the tax based upon the use thereof.

PHILLIPS concurring.